UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MOOSE TOYS PTY LTD; MOOSE :
CREATIVE PTY LTD; and MOOSE :
ENTERPRISE PTY LTD, :
 :
                      Plaintiffs, : **MEMORANDUM & ORDER**
 : 15-CV-4483 (DLI)(MDG)
                 -against- :
 :
THRIFTWAY HYLAN BLVD. DRUG CORP. :
d/b/a THRIFTWAY CARD & GIFT; :
THRIFTWAY STATEN ISLAND CARD :
CORP. d/b/a THRIFTWAY CARD & GIFT; :
THRIFTWAY ROSSVILLE CARD CORP. :
d/b/a THRIFTWAY CARD & GIFT; :
THRIFTWAY TOTTENVILLE CARD CORP. :
d/b/a/ THRIFTWAY CARD & GIFT; :
THRIFTWAY CROSSINGS CARD CORP. :
d/b/a THRIFTWAT CARD & GIFT; HAL :
EPSTEIN; PAUL EPSTEIN; IAN EPSTEIN; :
SCOTT STROMER; and HOWARD DORF, :
 :
                      Defendants. :
------------------------------------------------------------ X

**DORA L. IRIZARRY, U.S. District Judge:**

On July 31, 2015, Plaintiffs Moose Toys Pty LTD, Moose Creative Pty LTD, and Moose Enterprise Pty LTD (collectively, "Plaintiffs" or "Moose Toys") filed the instant action against Defendants Thriftway Hylan Blvd. Drug Corp. d/b/a Thriftway Card & Gift, Thriftway Staten Island Card Corp. d/b/a Thriftway Card & Gift, Thriftway Rossville Card Corp. d/b/a Thriftway Card & Gift, Thriftway Tottenville Card Corp. d/b/a Thriftway Card & Gift, Thriftway Crossings Card Corp. d/b/a Thriftway Card & Gift, Hal Epstein, Paul Epstein, Ian Epstein, Scott Stromer, and Howard Dorf (collectively, "Defendants"), asserting federal claims under the Lanham Act for trademark infringement, counterfeiting, and unfair competition, as well as state claims for

unfair competition, unjust enrichment, and violations of the New York General Business Law. On August 3, 2015, on an *ex parte* application by Plaintiffs, this Court issued a temporary restraining order ("TRO"), seizure order, order to show cause, and sealing order. This Memorandum & Order accompanies the Court's Orders of August 3, 2015, and explains the reasoning therefor.

## BACKGROUND

Plaintiff(s) Moose Toys is an Australia-based manufacturer of toys and children's lifestyle products. (Compl. ¶ 26, Docket Entry No. 1.) Plaintiffs' line of successful products includes Shopkins, a series of 400 miniature collectible figures and related accessories, marketed and sold in supermarkets and other shops worldwide ("Shopkins Products"). (*See id.* ¶¶ 26-30.) Millions of Shopkins and other products from the Shopkins line have been sold. (Decl. of Michelle Groves ("Groves Decl.") ¶ 7, Docket Entry No. 1-9.) Plaintiffs are the owners and/or exclusive licensees of two registered Trademarks in connection with the "SHOPKINS" wordmark and the stylized "Moose Enterprises" logo (collectively, "Plaintiffs' Marks"). (Compl. ¶ 36.) According to Plaintiffs, the date of first use for the former is October 29, 2012, and for the latter it is July 15, 2002. (*Id.* ¶ 37.)

Defendants are corporations, as well as certain corporate officers and store managers, that own or operate a chain of "Thriftway" businesses with at least four retail locations in Staten Island, New York, including: 2730 Arthur Kill Road, Staten Island, NY 10309 ("Arthur Kill Store"); 7001 Amboy Road #8, Staten Island, NY 10307 ("Amboy Store"); 150 Greaves Lane #F, Staten Island, NY 10308 ("Greaves Store"); and 2728 Hylan Blvd., Staten Island, NY 10306 ("Hylan Store"). (*See Id.* ¶¶ 14-21.) On or about June 24, 2015, Plaintiffs were notified by a concerned consumer that the Arthur Kill Store was selling what appeared to be counterfeit

Shopkins Products of inferior quality. (*See id.* ¶ 42.) Plaintiffs' United States counsel thereafter retained an investigator to purchase some of the suspect products for further inspection. (*Id.* ¶ 43.) The investigator did so on June 26 and 29, 2015, purchasing products offered for sale as Shopkins Products from the Arthur Kill Store, the Amboy Store, and the Greaves Store, but not the Hylan Store. (*See id.* ¶¶ 44-48; Decl. of William Ryan ("Ryan Decl.") ¶¶ 5-14, Docket Entry. No. 1-8.) The investigator turned the products over to Plaintiffs, who confirmed that they were counterfeit Shopkins Products and/or products that otherwise infringed on Plaintiffs' Marks. (*See* Compl. ¶¶ 45, 47, 49.)

Thereafter, on July 31, 2015, Plaintiffs filed the Complaint against Defendants, attaching photo comparisons to substantiate their claims of counterfeiting. Concurrent with the filing of the Complaint, Plaintiffs made an *ex parte* application for provisional relief in the form of: (1) an order to show cause ("OTSC") why a preliminary injunction should not issue; (2) a temporary restraining order ("TRO"); (3) a seizure order; (4) an asset restraining order; and (5) an order temporarily sealing the Court file. Plaintiffs' various requests for relief are granted with the exception that the seizure order is denied with respect to the Hylan Store, and the asset restraining order is denied in its entirety. The terms of the TRO, OTSC, and seizure order are detailed in this Court's August 3, 2015 Orders.

**DISCUSSION**

**A.     TRO and OTSC for a Preliminary Injunction**

Within the Second Circuit, the standards for the entry of a TRO are the same as those that govern the entry of a preliminary injunction, and require the plaintiff to demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits . . . and a balance of hardships tipping towards the party requesting

preliminary relief." *Fequiere v. Tribeca Lending*, 2015 WL 1412580, at *2 (E.D.N.Y. Mar. 20, 2015) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)).

To prevail on their trademark infringement and counterfeiting claims under the Lanham Act, Plaintiffs must establish: "(1) that [they have] a valid trademark entitled to protection under the Act, and (2) defendant[s'] actions are likely to cause confusion." *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 2006 WL 3095827, at *1 (E.D.N.Y. Oct. 31, 2006) (quoting *Arrow Fastener v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995)). With respect to the first element, "[a] certificate of registration with the Patent and Trademark Office is prima facie evidence that a mark is valid and entitled to protection, the registrant owns the mark and it has exclusive right to use the mark in commerce." *Id.* (citing *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt. Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)). Thus, by providing registration statements for both the "SHOPKINS" mark and the "Moose Enterprises" mark, as attached to the Groves Declaration, Plaintiffs have satisfied their initial burden to show a valid trademark entitled to protection.

To determine whether Plaintiffs have established a likelihood of confusion, the second element of their trademark claims, this Court looks to the eight factors set forth in *Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), of which the "similarity of the marks" test is particularly salient here. More than a likelihood of confusion, Plaintiffs contend that actual confusion exists because a concerned consumer purchased allegedly counterfeit Shopkins Products from Defendants, believing them to be authentic, and then complained to Plaintiffs about the inferior quality. Confusion is all the more likely, Plaintiffs argue, because Defendants sell authentic Shopkins Products purchased from authorized distributors side-by-side with the counterfeit products. (*See* Groves Decl. ¶ 27.) Furthermore, the photo comparisons

4

attached to the Complaint establish not just a similarity of marks, but that the allegedly counterfeit products explicitly copy Plaintiffs' Marks, Shopkins' packaging, and other features distinctive of Shopkins Products. As such, a step-by-step analysis of the *Polaroid* factors is not necessary to support a finding of confusion, as "counterfeit marks are inherently confusing." *Edward B. Beharry & Co.,* 2006 WL 3095827, at *2 (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005)); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]onfusing the customer is the whole purpose of creating counterfeit goods.").

Having demonstrated a likelihood of confusion, Plaintiffs establish both a likelihood of success on the merits and irreparable harm. *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (In trademark disputes, "a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.") Plaintiffs, therefore, are entitled to a TRO restraining Defendants from any counterfeiting or infringing actions with respect to Shopkins Products, but the terms of the TRO should not be more restrictive than reasonably is necessary to achieve the TRO's underlying purpose of preventing irreparable harm. Accordingly, the TRO sought by Plaintiffs is granted except with respect to a proposed provision that would restrain Defendants from communicating with unspecified individuals who may have sold, purchased, or possessed counterfeit Shopkins Products. That provision seeks to place a prior restraint on Defendants' speech, a measure this Court is prohibited from taking. Finally, in connection with the TRO, Plaintiffs seek, and are entitled to, the entry of an OTSC for a preliminary injunction that would extend the restraints on Defendants pending a final hearing or determination in this matter.

**B.     Seizure Order**

Under 15 U.S.C. § 1116(d), this Court has the authority to grant an *ex parte* order providing for the seizure of counterfeit goods. Courts in this Circuit have not hesitated to exercise that authority in infringement cases in which there is a danger the defendants will destroy, conceal, or transfer counterfeit goods. While *ex parte* seizure orders represent extraordinary relief, the policy justifying them in such cases is well established: "If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of 'notice,' and it is surely not what the authors of the rule either anticipated or intended." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979).

However, in light of their potential for misuse, *ex parte* seizure orders are permissible only in limited circumstances that meet the specific requirements of the statute, as set forth in seven separate subsections under 15 U.S.C. § 1116(d)(a)(B). Having determined that the requirements enumerated in 15 U.S.C. § 1116(d)(a)(B)(ii) – (vi) all are met, the Court concludes that whether an *ex parte* seizure order is appropriate turns on 15 U.S.C. § 1116(d)(a)(B)(i) and (vii). Those provisions, respectively, require the Court to find: (1) that "an order other than an ex parte seizure order is not adequate to achieve the purposes" of the anti-counterfeiting statute; and (2) that "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." *See Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.*, 924 F. Supp. 17, 20 (S.D.N.Y. 1996) (analyzing the two requirements in tandem.)

While the likelihood that a defendant would destroy, conceal, or transfer counterfeit

goods depends on the specific facts of each case, some guiding principles can be derived from the relevant authorities. For example, courts have considered whether the defendant's sale of counterfeit goods likely was knowing and willing. *See, e.g. Vuitton v. White*, 945 F.2d 569, 570 (2d Cir. 1991) (holding that an *ex parte* seizure order could be appropriate against certain vendors of counterfeit goods who "openly admitted that their merchandise was not authentic.") Courts have also looked to, *inter alia*, the scope of the counterfeiting alleged, the nature of the business engaged in the counterfeiting and whether it is a fixed location or more of a "fly-by-night" operation, and any demonstrated pattern by the defendant of trying to avoid detection, refusing to cease and desist, or refusing to comply with court orders. *See, e.g.*, *id.* at 570, 575; *Cisco Tech., Inc. v. Certification Trendz Ltd.*, 2015 WL 3936360, at *3 (D. Conn. June 26, 2015); *see also World Wrestling Entertainment, Inc. v. Unidentified Parties*, 770 F.3d 1143, 1144 (5th Cir. 2014).

Although certain of those considerations are more relevant in this case than others, using them as guideposts, the Court finds that the Groves Declaration and Ryan Declaration set forth sufficient facts demonstrating that Defendants, if provided notice of the seizure order, would attempt to destroy, conceal, or transfer the counterfeit goods and/or related evidence. In particular, Defendants allegedly sell authentic Shopkins Products purchased from authorized dealers alongside the counterfeit products, suggesting that they are knowingly engaging in infringing activities using an unauthorized source. In addition, Defendants evidently sell out of Shopkins Products (whether authentic or counterfeit) at a fast rate and frequently deplete and restock inventory, providing them with the means to quickly dispose of or transfer the counterfeit products.

Accordingly, Plaintiffs' request for an *ex parte* seizure order is granted with respect to the

7

Arthur Kill Store, the Amboy Store, and the Greaves Store, *i.e.* each store from which Plaintiffs' investigator actually purchased Shopkins Products later confirmed to be counterfeit. The Court is mindful, however, that "seizures pursuant to civil actions are subject to Fourth Amendment scrutiny." *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F. Supp. 407, 412 (E.D.N.Y. 1994). In accordance with that principle, the seizure order is denied with respect to the Hylan Store. Plaintiffs' investigator never visited that store and Plaintiffs have not presented any other evidence that counterfeit Shopkins Products are being offered for sale there. Therefore, Plaintiffs have not provided any evidentiary basis for this Court to order a seizure there.

C.  **Asset Restraining Order**

As recently reaffirmed by the Second Circuit in *Gucci America, Inc. v. Weixing Li*, district courts "have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases." 768 F.3d 122, 132 (2d Cir. 2014). The Lanham Act expressly provides for the equitable remedy of an accounting in certain circumstances. *See* 15 U.S.C. § 1117(a). Here, the Complaint demands relief that includes "entitle[ment] to . . . all gains, profits and advantages obtained by Defendants" as a result of their "unlawful and infringing actions." (Compl. ¶¶ 63, 74, 83.) That language reasonably could be construed as demanding an accounting, which would permit this Court to freeze Defendants' assets to ensure that any equitable relief to which Plaintiffs ultimately are entitled can be satisfied.

However, the fact that the Court has the discretion to freeze Defendants' assets does not necessarily mean that the Court must exercise its discretion in every case. The Court finds that there is an insufficient basis to do so in this case. Plaintiffs have not adequately shown that

Defendants, operators of a chain of active businesses with retail locations, substantial inventories, and other assets, pose a serious risk of not being able to account for profits derived from the sale of products that represent just a fraction of their overall offerings. Nor have Plaintiffs presented any evidence demonstrating a "likelihood that the Defendants will frustrate final equitable relief by secreting or transferring" funds. *Cisco Tech., Inc.*, 2015 WL 3937318, at *2. Accordingly, the Court finds that there is not a sufficient basis for the expansive asset restraining order sought by Plaintiffs, which would reach all of Defendants' assets and restrain all of their accounts. Plaintiffs' request for an asset restraining order, therefore, is denied without prejudice.

**D.     Sealing Order**

In light of the fact that the Court has granted Plaintiffs' request for an *ex parte* seizure order, Plaintiffs' accompanying request for temporary sealing of the case docket is granted. *See* 15 U.S.C. § 1116(d)(8).

## CONCLUSION

For the foregoing reasons, Plaintiffs' requests for a TRO, an OTSC, a sealing order, and an *ex parte* seizure order are granted, except that the seizure order is denied without prejudice with respect to the Hylan Store. Plaintiffs' request for an asset restraining order is denied without prejudice.

**SO ORDERED.**

Dated: Brooklyn, New York
        August 6, 2015                                                          /s/          _
                                                                    DORA L. IRIZARRY
                                                                    United States District Judge